**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-416 (TJK)** |
| **v.** | : | |
| | : | |
| **TONYA BISHOP,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendant Tonya Bishop has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Bishop to 14 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.    **Introduction**

Defendant Tonya Bishop, a 47-year-old homemaker and former certified nursing assistant, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the

peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Bishop pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). The government's recommendation is supported by Bishop's (1) entrance into the U.S. Capitol Building through the Senate Wing Door just minutes after its initial breach, amid signs of the violent breach that were still fresh and obvious; and (2) lengthy time spent inside the U.S. Capitol Building, during which she traveled extensively through various areas of the Building, including near the Speaker's Lobby and outside of the House Chamber.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Bishop's crime support a sentence of 14 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service and $500 in restitution.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.      Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 27.

*Defendant Bishop's Role in the January 6, 2021 Attack on the Capitol*

Tonya Bishop resides in Florida with her husband, Bryan Bishop.[2]  On January 4, 2021, in a recorded phone call with her son, Bishop said "on the 6th, Trump has called the Patriots together, a bunch of us are headed over there."

Then, on January 6, 2021, Bishop attended the former President's "Stop the Steal" rally at the Washington Monument.  *See* ECF No. 27 at ¶ 8.  She wore a knit hat with a large red horizontal stripe surrounded above and below by a smaller white stripe. *See* Image 1.

---

[2] On November 15, 2023, Bryan Roger Bishop was indicted on nine counts for his involvement in the January 6, 2021 attack on the United States Capitol.  *See* Case No. 1:23-CR-400 (TJK).  Bryan Bishop was charged with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), as to Count One; Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon and Inflicting Bodily Injury, in violation of 18 U.S.C. §§ 111(a)(1), (b), as to Counts Two and Three; Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1), (b)(1)(A), as to Count Four; Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2), (b)(1)(A), as to Count Five; Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), as to Count Six; Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), as to Count Seven; Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 5104(e)(2)(F), as to Count Eight; and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), as to Count Nine. On April 30, 2024, B. Bishop pled guilty to a Lesser Offense of Count Three; Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). Sentencing is scheduled for August 29, 2024.



*Image 1 – Photo of Bishop outside the U.S. Capitol on January 6, 2021*

Bishop left the rally and walked to the U.S. Capitol with a large crowd. She entered the restricted grounds of the U.S. Capitol and continued through the U.S. Capitol grounds up towards the Senate Wing Door.  *See* ECF No. 27 at ¶¶ 8-9.

Tonya Bishop entered the U.S. Capitol Building at 2:19 p.m through the Senate Wing Door—approximately 6 minutes after that door was breached. Bishop was carrying two flagpoles, smiling, and engaging with a female elderly travel companion. At the time when Bishop entered the U.S. Capitol Building, glass had been broken on the Senate Wing Door and adjacent windows and there was an alarm blaring.  *See* ECF No. 27 at ¶ 10; *see also* Image 2.



*Image 2 – Screenshot from CCTV at 2:19 p.m. - Bishop circled in yellow*

From there, Bishop traveled further into the U.S. Capitol Building. She entered the Crypt and stood briefly among a large group of individuals who were facing a line of U.S. Capitol Police officers.  *See* Image 3. The large group eventually pushed past the police officers, which allowed Bishop to move through the Crypt and exit on the opposite side.



*Image 3 – Screenshot from CCTV at 2:21 p.m. - Bishop circled in yellow*

After exiting the Crypt, Bishop stood near the Memorial Doors and appeared to engage with a male elderly travel companion. *See* Image 4.



*Image 4 – Screenshot from CCTV at 2:27 p.m. - Bishop circled in yellow*

Bishop ascended the stairs and entered Statuary Hall, which is a floor above the Crypt and Memorial Doors.  *See* Image 5.



*Image 5 – Screenshot from CCTV at 2:32 p.m. - Bishop circled in yellow*

Bishop then joined a large group in the Statuary Hall Connector. *See* Image 6. The group was blocked at the threshold of the hallway to the Hall of the House of Representatives by U.S. Capitol Police. At 2:35 p.m., the group—including Bishop—pushed pass U.S. Capitol Police and proceeded towards the Chamber of the House of Representatives.  While some members of the House of Representatives had been evacuated by this time, others were trapped inside the chamber, hiding in the gallery. U.S. Capitol Police officers inside the House Chamber barricaded the door and drew their weapons to prevent rioters from entering.



*Image 6 – Screenshot from CCTV at 2:35 p.m. - Bishop circled in yellow*

Bishop proceeded down the hallway outside of the House Chamber, and at 2:41 p.m. she walked down a corridor towards the East Stairs with a large group.  Bishop passed the East Stairs and walked near the Upper House Door interior area toward the Speaker's Lobby at 2:42 p.m.  By 2:46 p.m., Bishop had turned around, and walked toward the Upper House Doors. Bishop paused near the Upper House Doors with her elderly travel companions for approximately one minute before being gestured towards the exit by U.S. Capitol Police.  *See* Image 7.

]



*Image 7 – Screenshot from CCTV at 2:46 p.m. - Bishop circled in yellow*

Bishop and her elderly travel companions exited the Capitol at 2:47 p.m., almost 30 minutes after they had entered.

Bishop was arrested in the Southern District of Florida on August 7, 2023. She and her husband spoke to the media and Bishop did not denounce her actions on January 6, 2021. *See Local 10 News, Aug. 8, 2023, available at https://www.local10.com/news/local/2023/08/08/after-arrest-marathon-couple-accused-in-jan-6-capitol-riot-faces-federal-judge/.*

*The Charges and Plea Agreement*

On November 28, 2023, the United States charged Bishop by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On March 7, 2024, pursuant to a plea agreement, Bishop pleaded guilty to Counts Three and Four of the Information, charging her with a violation of 40 U.S.C. §§ 5104(e)(2)(D) and (G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Tonya Bishop now faces sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Bishop's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Bishop, the absence of violent or destructive acts is not a mitigating factor. Had Bishop engaged in such conduct, she would have faced additional criminal charges.

One of the most important factors in Bishop's case is length of time she spent inside the U.S. Capitol building and the areas to which she traveled, including outside of the House Chamber and near the Speaker's Lobby. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Bishop's History and Characteristics

As set forth in her PSR, Bishop does not have any criminal history.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Although Bishop has no prior criminal history, her decision to participate in the events of January 6, 2021, to enter the U.S. Capitol Building during the riot, and to contribute to the chaos inside calls for substantial deterrence. There are appropriate ways to express one's political opinions; participating in a riot targeted at Congress' certification of the Electoral College vote was not one of those ways. An appropriate sentence must be imposed to prevent Bishop from repeating these criminal acts in the future.

At the time of her arrest, Bishop did not denounce her actions on January 6, 2021.  She and her husband spoke to the media and Bishop took no responsibility for her actions. *See* Local 10 News, Aug. 8, 2023, available at *https://www.local10.com/news/local/2023/08/08/after-arrest-marathon-couple-accused-in-jan-6-capitol-riot-faces-federal-judge/*.  Bishop also did not denounce her actions during her May 7, 2024 interview with the Probation Officer. PSR at ¶ 26. It was not until May 13, 2024, in a statement provided by Bishop's counsel, that she expressed any remorse. PSR at ¶ 28. The Court should view Bishop's belated expressions of remorse with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large

numbers of Americans and people worldwide were horrified at what happened that day. It came

when he realized that he could go to jail for what he did. And that is when he felt remorse, and that

is when he took responsibility for his actions.") (statement of Judge Chutkan).

With the 2024 presidential election approaching, a rematch on the horizon, and many loud

voices in the media and online continuing to sow discord and distrust, the potential for a repeat of

January 6 looms ominously. The Court must sentence Bishop in a manner sufficient to deter her

specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles

in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This

Court must sentence Bishop based on her own conduct and relevant characteristics, but should

give substantial weight to the context of her unlawful conduct: her participation in the January 6

riot.

Bishop has pleaded guilty to Counts Three and Four of the Information, charging her with

disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol, in

violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three), and parading, demonstrating, or picketing

in any Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four). These are Class

B misdemeanors, to which the Sentencing Guidelines do not apply. 18 U.S.C. § 3559. The

sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted

---

[3] A routinely updated table providing additional information about the sentences imposed on other
Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases.
To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL
BREACH CASES." The table shows that imposition of the government's recommended sentence
in this case would not result in an unwarranted sentencing disparity.

sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.  In *United States v. Fiol*, 23-CR-196-RCL, the defendant pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). Fiol entered the Capitol through the Senate Wing Doors after watching videos on his cell phone of police deploying tear gas against the crowd and rioters climbing walls to get closer to the Capitol. Fiol entered sensitive areas of the Capitol Building, including Senator Jeff Merkley's private office area and the Spouse's Lounge, before exiting after 25 minutes inside. The Court sentenced Fiol to 45 days' incarceration and 24 months' probation.

In *United States v. Mark Nealy*, 23-CR-278-TSC, the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (parade, demonstrate, or picket in any of the Capitol Buildings).  Nealy entered the Capitol building through the Senate Wing Door 12 minutes after it was breached and walked around the interior of the Capitol building for approximately 13 minutes before exiting at the direction of police officers.  Judge Chutkan sentenced Nealy to 14 days' incarceration.

Finally, in *United States v. Nhi Ngoc Mai Le*, 23-CR-317-TSC, the defendant pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). Le entered the Capitol through the Parliamentarian Door just two minutes after the door's second breach, which she witnessed and

filmed. She encouraged other rioters to enter the Capitol, and once inside, proceeded directly to a Senate office, where she posed for a picture with her feet on a desk. Inside only six minutes in total, Le was sentenced to 10 days' incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.   Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Bishop must pay $500 in restitution, which reflects in part the role Bishop played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Bishop's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 106.

## VI.    Fine

The defendant's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Four) subject her to a statutory maximum fine of $5000 for Count Three and $5000 for

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Count Four. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994). Here, the defendant has not shown an inability to pay (*see* PSR ¶ 86), thus the Court has authority to impose a fine.

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days' incarceration on Count Three and 24 months' probation on Count Four, 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Bishop's liberty as a consequence of her behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *s/ Sonia W. Murphy*
   SONIA W. MURPHY
   Trial Attorney, U.S. Department of Justice
   Detailed to the United States Attorney's Office
   601 D Street, NW
   Washington, DC 20001
   D.C. Bar No. 483072
   202-305-3067
   Sonia.Murphy@usdoj.gov